[921 NE2d 567, 893 NYS2d 800]

Richard E. Snyder, Appellant, v Edgar M. Bronfman, Jr., Respondent.

Argued October 14, 2009; decided November 23, 2009

**POINTS OF COUNSEL**

*Stillman, Friedman & Shechtman, P.C.,* New York City (*Paul Shechtman* and *Nathaniel Z. Marmur* of counsel), and *Wilson Sonsini Goodrich & Rosati* (*Robert Gold* and *Meredith Kotler* of counsel) for appellant. Richard Snyder and Edgar Bronfman were parties to an oral joint venture agreement and therefore the statute of frauds (General Obligations Law § 5-701 [a] [10]) does not bar Snyder's claims. (*Matter of ATM One v Landaverde,* 2 NY3d 472; *Dura v Walker, Hart & Co.,* 27 NY2d 346; *Minichiello v Royal Bus. Funds Corp.,* 18 NY2d 521; *Freedman v Chemical Constr. Corp.,* 43 NY2d 260; *Pugliese v Mondello,* 57 AD3d 637; *Foster v Kovner,* 44 AD3d 23; *Charles Hyman, Inc. v Olsen Indus.,* 163 AD2d 232; *Richman v Federated Adj. Co.,* 95 AD2d 850; *Chalmers v Eaton Corp.,* 71 AD2d 721; *Train v Ardshiel Assoc., Inc.,* 635 F Supp 274.)

*Gibson, Dunn & Crutcher LLP,* New York City (*Orin Snyder* and *Alexander Southwell* of counsel), and *Indraneel Sur,* Washington, D.C., for respondent. I. General Obligations Law § 5-701 (a) (10) bars Richard Snyder's claims based on an alleged oral promise to pay compensation for assistance in negotiating the Warner Music Group acquisition. (*Morgenthau v Avion Resources Ltd.,* 11 NY3d 383; *American Tr. Ins. Co. v Sartor,* 3 NY3d 71; *Thoreson v Penthouse Intl.,* 80 NY2d 490; *Nemelka v Questor Mgt. Co., LLC,* 40 AD3d 505; *Cartier v Lear Siegler, Inc.,* 115 AD2d 584; *Freedman v Chemical Constr. Corp.,* 43 NY2d 260; *Kuhl v Piatelli,* 31 AD3d 1038; *Super v Abdelazim,* 108 AD2d 1040; *Intercontinental Planning v Daystrom, Inc.,* 24 NY2d 372; *Minichiello v Royal Bus. Funds Corp.,* 18 NY2d 521.) II. Applying General Obligations Law § 5-701 (a) (10) to bar Richard Snyder's claims is consistent with this Court's decision in *Dura v Walker, Hart & Co.* (27 NY2d 346 [1971]). (*Dung v Parker,* 52 NY 494; *Roberts v Champion Intl.,* 52 AD2d 773; *Intercontinental Planning v Daystrom, Inc.,* 30 AD2d 519, 24 NY2d 372; *Haskins v Loeb Rhoades & Co.,* 52 NY2d 523; *Nemelka v Questor Mgt. Co., LLC,* 40 AD3d 505; *Kuhl v Piatelli,* 31 AD3d 1038; *Sugar Cr. Stores v Pitts,* 198 AD2d 833; *Pugliese v Mondello,* 57 AD3d 637; *Richman v Federated Adj. Co.,* 95 AD2d 850; *Chalmers v Eaton Corp.,* 71 AD2d 721.)

*Cullen and Dykman LLP,* Garden City (*Jennifer A. McLaughlin* and *Peter J. Mastaglio* of counsel), for Business Council of the State of New York, Inc., amicus curiae. I. General Obligations Law § 5-701 (a) (10) is not applied solely to limited and transitory efforts of a broker or finder. (*Freedman v Chemical Constr. Corp.,* 43 NY2d 260; *Baird v Krancer,* 138 Misc 360.) II. Appellant's joint venture claim is neither subject to this Court's review nor viable. (*Langer v Dadabhoy,* 44 AD3d 425; *Nemelka v Questor Mgt. Co., LLC,* 40 AD3d 505; *Freedman v Chemical Constr. Corp.,* 43 NY2d 260.) III. The First Department properly dismissed appellant's causes of action for unjust enrichment and quantum meruit. IV. Appellant's desired exception to General Obligations Law § 5-701 (a) (10) would invite baseless and costly suits against businesses. (*Minichiello v Royal Bus. Funds Corp.,* 18 NY2d 521.)

## OPINION OF THE COURT

Smith, J.

We hold that quantum meruit and unjust enrichment claims brought to recover the value of plaintiff's services in helping to achieve a corporate acquisition are barred by the statute of frauds contained in General Obligations Law § 5-701 (a) (10).

### I

Because this case arises on a motion to dismiss the first amended complaint (complaint) under CPLR 3211, we take the facts alleged by plaintiff to be true. Where the allegations are ambiguous, we resolve the ambiguities in plaintiff's favor.

Plaintiff and defendant, who had been casual acquaintances, ran into each other while vacationing in the Caribbean in the winter of 2001-2002. Their meeting led to an oral agreement, characterized by plaintiff as a joint venture, to acquire and operate companies in the media business. Though defendant was a member of a wealthy family, the acquisitions would be made principally with funds from non-family sources.

It was agreed that plaintiff would function as defendant's " 'experienced right hand', 'sounding board', 'loyal ally', 'principal advisor', and most importantly, his 'consigliere.' " The parties agreed that each of them would pay his own expenses and draw no salary, except that defendant, who had already leased new office space, would bear most of the office costs. Defendant assured plaintiff that he would be able to "share in the proceeds on any consummated transaction" without putting up

his own funds. He also guaranteed that "on any consummated deal, [plaintiff] would receive a share of the value created that would be 'fair and equitable.' " It is not alleged that this agreement was reduced to writing, or that any note or memorandum of it exists.

Beginning in January 2002, plaintiff worked on trying to put together acquisitions for the joint venture. Plaintiff "developed for the Joint Venture a series of business relationships with key figures in the corporate and investment banking communities." He also met with defendant and defendant's other business associates to discuss possible acquisitions. And he worked on several aborted deals: proposed acquisitions of an interest in the Columbia House Company, of Prestige Brands, and of Vivendi Universal's media assets.

Finally, a deal came to fruition: defendant and a group of other investors agreed to acquire Warner Music from Time Warner for approximately $2.6 billion in cash. Plaintiff was a major contributor to this success: he identified the opportunity, persuaded defendant of its merits, helped to get debt financing and obtained financial information from the target company. After the deal was announced, plaintiff pursued an effort to merge Warner Music with one of its competitors, EMI. The proposed EMI merger collapsed, but the deal to acquire Warner Music closed in March 2004.

Defendant invited plaintiff to make an investment in the acquired company, and plaintiff put $1.3 million into the deal. The following month, however, defendant told plaintiff "[T]here's no room here for you at Warner's" and refused plaintiff's demand for "a lot of money" for plaintiff's contribution to the transaction. This lawsuit followed.

Plaintiff's complaint asserted causes of action for breach of a joint venture agreement, breach of fiduciary duty, an accounting of joint venture assets, unjust enrichment, promissory estoppel and quantum meruit. On defendant's CPLR 3211 motion, Supreme Court dismissed all but the unjust enrichment and quantum meruit claims, finding that the alleged agreement was "too inherently vague to support a joint venture claim" (19 Misc 3d 1126[A], 2008 NY Slip Op 50859[U], *5) and that the promissory estoppel claim was deficient for the same reason. However, Supreme Court held the statute of frauds inapplicable, and concluded that plaintiff "adequately states a cause of action sounding both in

quantum meruit and unjust enrichment," and thus could recover "reasonable value for any services actually rendered" (*id.* at \*7). Defendant appealed to the Appellate Division; plaintiff did not cross-appeal.

The Appellate Division reversed and dismissed the surviving causes of action (*Snyder v Bronfman*, 57 AD3d 393 [1st Dept 2008]). It held that plaintiff's unjust enrichment and quantum meruit claims "fall squarely within the statute's broad and unambiguous prohibition as they seek compensation for plaintiff's role in the acquisition of Warner Music Group" (*id.* at 394). We granted leave to appeal (12 NY3d 709 [2009]), and now affirm.

## II

General Obligations Law § 5-701 (a) (10) says, in relevant part:

> "Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking . . .
>
> "Is a contract to pay compensation for services rendered in negotiating a loan, or *in negotiating the purchase*, sale, exchange, renting or leasing of any real estate or interest therein, or *of a business opportunity, business*, its good will, inventory, fixtures *or an interest therein*, including a majority of the voting stock interest in a corporation and including the creating of a partnership interest. 'Negotiating' includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction. *This provision shall apply to a contract implied in fact or in law to pay reasonable compensation . . . .*" (Emphasis added.)

The issue before us is whether this statute bars plaintiff's claims for unjust enrichment and quantum meruit.

Unjust enrichment and quantum meruit are, in this context, essentially identical claims, and both are claims under "a contract implied . . . in law to pay reasonable compensation." Indeed, the "implied in fact or in law" language was added to the statute in 1964 to make clear that the statute of frauds applies to quantum meruit claims (Letter of John Robert Brook,

Chairman, Assembly Judiciary Committee to Sol Neil Corbin, Counsel to Governor, dated Mar. 12, 1964, Bill Jacket, L 1964, ch 561, at 18). Thus the question is whether the compensation plaintiff seeks is "for services rendered . . . in negotiating the purchase . . . of a business opportunity, business . . . or an interest therein"—with "negotiating" defined to include both "procuring an introduction" and "assisting in the negotiation or consummation of the transaction."

The answer to this question is yes. The essence of plaintiff's claim is that he devoted years of work to finding a business to acquire and causing an acquisition to take place—efforts that ultimately led to defendant's acquisition of his interest in Warner Music. In seeking reasonable compensation for his services, plaintiff obviously seeks to be compensated for finding and negotiating the Warner Music transaction. His claim is of precisely the kind the statute of frauds describes.

Plaintiff's theory—which Supreme Court accepted—is that his joint venture agreement with defendant was not subject to the statute of frauds, because it was not just a contract to look for and acquire businesses, but one both to acquire them jointly and to operate them jointly after they were acquired. This argument, in our view, misses the point. Plaintiff did not appeal from Supreme Court's holding that his actual contract with defendant (as opposed to his "implied in law" contract) was unenforceable for indefiniteness. He now concedes that holding was correct, as it clearly was; the contract included no compensation term more specific than "a share . . . that would be 'fair and equitable.' " Whether this unenforceable contract, if it had been otherwise enforceable, would have been barred by the statute of frauds is an academic question, and perhaps an unanswerable one; in any event, there is no reason to answer it here. The question is simply whether plaintiff is now seeking compensation for services rendered in finding and negotiating a business opportunity. He is.

The cases on which plaintiff relies do not suggest a different conclusion. We held in *Dura v Walker, Hart & Co.* (27 NY2d 346 [1971]) that General Obligations Law § 5-701 (a) (10) did not apply to an oral agreement between two finders to share a commission. The rationale of *Dura* was that the statute of frauds applies to brokers' and finders' dealings with their principals, "not with one another" (*id.* at 350). *Dura* has no application here. In *Freedman v Chemical Constr. Corp.* (43 NY2d 260, 267 [1977]) we remarked, in the course of holding a plaintiff's claim

to be barred by General Obligations Law § 5-701 (a) (10), that the plaintiff's role in a transaction was "limited and transitory"—but that does not mean that every broker or finder who plays more than a "limited and transitory" role in a transaction is entitled to recover. The more relevant language in *Freedman* says that "where . . . the intermediary's activity is . . . that of providing 'know-how' or 'know-who', in bringing about between principals an enterprise of some complexity or an acquisition of a significant interest in an enterprise," the statute of frauds applies (*id.*). That describes what plaintiff did here.

Accordingly, the order of the Appellate Division should be affirmed with costs.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur.

Order affirmed, with costs.