[817 NYS2d 37]

Michael A. Lacher, Respondent, v Thomas E. Engel, Appellant.

First Department, June 20, 2006

**APPEARANCES OF COUNSEL**

*Cravath, Swaine & Moore LLP*, New York City (*Max R. Shulman* of counsel), for appellant.

*Edward B. Safran*, New York City, for respondent.

**OPINION OF THE COURT**

CATTERSON, J.

In this defamation action, both plaintiff and defendant are attorneys. Plaintiff alleges that defendant filed a sham complaint on behalf of plaintiff's former client solely for the purpose of allowing defendant to defame plaintiff while claiming the benefit of privilege. Defendant now appeals from an order which denied in part his motion for summary judgment dismissing the complaint.

The plaintiff in this action is attorney Michael Lacher. The defendant is attorney Thomas Engel. For approximately 18 months, starting in early 2002, plaintiff and his firm, Lacher & Lovell-Taylor, P.C., represented Parametric Capital Manage-

ment, LLC, Diversified Capital Management Ltd.[1] and Erik Post-nieks (hereinafter referred to collectively as Parametric) in an arbitration proceeding pending before the American Arbitration Association.

It is undisputed that at the beginning of June 2003, in the middle of the arbitration proceeding, Lacher withdrew as counsel. He cited "irreconcilable ethical considerations" as well as a breach of the retainer agreement. By this time, Lacher had billed approximately three million dollars in fees, and had been paid at least two million dollars for his legal services. Parametric then retained Thomas Engel to represent them in the arbitration.

Prior to the completion of the arbitration proceeding, Parametric, through its counsel Engel, filed a complaint seeking damages against Lacher. Parametric claimed that Lacher had engaged in fraudulent billing practices and that he had misrepresented the skill and expertise of his law firm to represent Parametric in the arbitration. Specifically, the complaint alleged deceit and collusion under Judiciary Law § 487; fraud; legal malpractice; breach of implied contract; breach of fiduciary duty; unjust enrichment; and it sought rescission. Lacher cross-moved to dismiss the amended complaint pursuant to CPLR 3211 for failure to state a cause of action. The motion court granted Lacher's motion to dismiss but granted plaintiff leave to replead the legal malpractice and the breach of fiduciary duty causes of action when these claims became ripe upon completion of the arbitration proceeding. This Court affirmed. (*Parametric Capital Mgt., LLC v Lacher*, 15 AD3d 301 [2005].)

In the meantime, Lacher brought this action for defamation against attorney Engel. The complaint alleges Engel made defamatory statements on three different occasions: first, in the above-described complaint (hereinafter referred to as the malpractice action); second, in the course of the arbitration proceeding; and third, in an article in the New York Law Journal (hereinafter referred to as NYLJ) titled "Malpractice Suit Claims Attorney Padded Bills."

Engel moved to dismiss the complaint for failure to state a cause of action. He asserted that the statements were all privileged, either at common law or under Civil Rights Law

---

**1.** In the underlying $100 million action, Parametric, which manages multi-million-dollar market-timing hedge funds, was sued by its founders for breach of contract.

§ 74. Lacher argued that the privilege did not apply to these statements on the grounds that the entire malpractice action was a sham, designed to allow Engel to defame him while claiming the benefit of privilege.

Supreme Court denied Engel's motion in part, and held that Lacher could continue with the defamation suit on the basis of certain statements made in the malpractice action, the arbitration and to the NYLJ. Specifically, the court referred to the following statements: in the malpractice action, the statement that Lacher and his firm "used [the retainer] provision as a club with which to extort immediate payments" and the statement that Lacher "defrauded" the clients; in the arbitration proceeding, epithets used by Engel describing Lacher as a "thief," a "liar" and a "pathological character"; and lastly, a statement made by Engel to the NYLJ that the clients were "very poorly served by a member of [the legal] profession to whom duty came well after other aims and interests." Engel appealed.[2]

For the reasons set forth below, we modify to the extent of granting defendant's motion for summary judgment in its entirety, dismissing the complaint against the defendant.

It is well established that a statement made in the course of legal proceedings is absolutely privileged if it is at all pertinent to the litigation. (*Youmans v Smith*, 153 NY 214, 219 [1897].) In this seminal case, the Court made clear that the rule rests on the policy that counsel should be able to "speak with that free and open mind which the administration of justice demands" without the constant fear of libel suits. (*Id.* at 223.)

It is true, as Lacher asserts, that this absolute privilege may be "lost if abused." (*Halperin v Salvan*, 117 AD2d 544, 548 [1st Dept 1986].) More specifically, this Court held that the privilege is limited to statements which are not only pertinent to the subject matter of the lawsuit but are made "in good faith and without malice." (*Id.*, citing *Moore v Manufacturers' Natl. Bank of Troy*, 123 NY 420, 426 [1890].)

■ Lacher contends that where, as here, the statements were made maliciously, and the action was a mere sham for the purposes of cloaking defamatory statements, the privilege is inapplicable. However, his allegations are conclusory and contradicted by the facts.

**2.** While Lacher states that many of the statements dismissed by the motion court were in fact defamatory, there is no cross appeal.

In *Halperin,* this Court found that the allegation of malicious intent was "arguably substantiated" by the fact that the plaintiffs had not moved forward with the lawsuit, and because of the inflammatory language describing the purported class in the caption. (*Id.* at 547.)[3]

In the underlying action, Parametric pursued its lawsuit vigorously when Lacher initially moved to dismiss. Moreover, in December 2005, while the appeal of this defamation action was being perfected, the court granted Parametric's motion for leave to file and serve a second amended complaint in the malpractice action. The motion court granted leave for Parametric to re-plead the original breach of fiduciary duty and legal malpractice causes of action as well as add a breach of contract claim. As such, this is not a case where plaintiff failed to move forward, or where any court before which plaintiff and defendant have appeared has suggested, even remotely, that the underlying action is a sham or was brought solely for defendant's malicious motive.

In light of the foregoing, Lacher's assertion that the privilege is limited because the complaint was dismissed for failure to state a claim is obviously without merit. It need be addressed only to make clear that even had the complaint been dismissed, the limitation urged by Lacher would substantially contravene the policy that underlies the privilege. If the privilege existed only in cases that were ultimately sustained, none of the persons whose candor is protected by the rule—parties, counsel or witnesses—would feel free to express themselves. They would, in any case of alleged wrongdoing, face a penalty potentially more severe than sanctions or the imposition of fees.

The proper inquiry is whether the statements sustained as defamatory by the motion court "may possibly be pertinent" to the malpractice litigation. (*People ex rel. Bensky v Warden of City Prison,* 258 NY 55, 59 [1932].) As this Court has noted, the privilege "embraces anything that may possibly be pertinent or which has enough appearance of connection with the case." (*Seltzer v Fields,* 20 AD2d 60, 63 [1963], *affd* 14 NY2d 624 [1964].)

The original malpractice complaint framed a broad claim for fraud in the billing and provision of services. Thus, the motion

---

3. The caption of the class action stated it was being brought on behalf of "all other persons . . . who are aggrieved, hurt and have lost their savings, property, their homes and their marriages" as a result of doing business with the defendant. (*Id.* at 545.)

court erred in sustaining the defamation claims as to the statements in the malpractice complaint that Lacher "used [the retainer's] provision as a club with which to extort immediate payments of their fees"; and that Lacher "defrauded [Parametric]."

In the complaint, Parametric alleged that Lacher's firm misrepresented its experience and expertise in handling matters like the arbitration. It also alleged that Lacher failed to provide any kind of itemized time sheets for more than a year, and that the billing explanation consisted of a single paragraph. The complaint further alleged that the bills were heavily padded, containing charges for time spent on personal matters, such as visiting dating Web sites, or work not related to the Parametric matter. When Parametric protested, the complaint alleges that Lacher invoked the "timely payment" provision of the retainer agreement, and threatened to withdraw from the case immediately, if not paid.

It is clear that the statement, Lacher "defrauded [Parametric]" was pertinent to the second cause of action for fraud in the malpractice complaint. Indeed, it is difficult to see how one could plead a claim of fraud and never state that the perpetrator "defrauded" the victim. Here, the fraud allegedly consisted of both the initial misrepresentation about Lacher's expertise and the falsely inflated bills.

The allegations that Lacher "used [the retainer's] provision as a club" to extort fees from Parametric is directly pertinent to the breach of fiduciary duty claim. It is well settled that a fiduciary may breach his duties by exercising his contractual rights in an unfair or inequitable manner. (*See Richbell Info. Servs. v Jupiter Partners*, 309 AD2d 288 [1st Dept 2003].) Part of the fiduciary duty claim is that Parametric ended up paying bills they did not owe. The accusation of "extort[ion]" supports the contention that they paid the bills not because they agreed with them, but because they feared they would be seriously prejudiced in the arbitration by Lacher's threatened precipitous withdrawal. Thus, both statements in the malpractice action were pertinent to the cause of action for breach of fiduciary duty.

It is further undisputed that the same common-law privilege that applies to the complaint also applies to the statements made in the course of the arbitration. (*See Andrews v Gardiner*, 224 NY 440, 446 [1918] [absolute privilege applies "before tribunals having attributes similar to those of courts"].) Thus, the question, here too, is whether the statements held by the

motion court to be defamatory were possibly pertinent to the arbitration.

These statements were that Lacher was: a "thief," a "liar" and a "pathological character." Lacher argues that the statements about him and his alleged billing practices cannot be pertinent to the arbitration. He notes that he was not a party to the arbitration, and that the arbitration concerned a dispute wholly unrelated to the allegations in the malpractice complaint. As such, he concludes, they could have no "pertinence" to the arbitration.

Lacher is correct that the statements and his billing practices were irrelevant to the substantive issues in the arbitration. However, they were wholly germane to the motion in support of which Engel made the statements. When Lacher withdrew from representing Parametric in the arbitration, the panel granted Parametric a five-week extension for new counsel Engel to prepare sufficiently to proceed. Upon returning from that five-week hiatus, Engel sought, on behalf of Parametric, a further adjournment of some four months. The request was met with incredulity from the panel.

In support of the motion, Engel argued that, first, Lacher had initially promised to cooperate in the transition, but then refused to release any files until paid $200,000; second, that upon investigation, Engel realized that the $200,000 charge, and other bills from Lacher to Parametric were improper, fraudulent and inflated; and third, that as a result, there was a raging litigation battle over control of the files, case software and other materials necessary to defend the case. Engel also justified the delay on the grounds that Lacher had not done the proper preparatory work even though he had billed extensively for it.

Engel's choice of words, "thief" and "liar," was made in the context that Lacher had promised to cooperate, then allegedly reneged. It was also made in the context that the bills Lacher demanded be paid were alleged to be fraudulent. The epithets, therefore, while lacking in both style and restraint nevertheless were directly pertinent to the basis for the motion for a further extension in support of which defendant was arguing.

Engel's statement that Lacher was a "pathological character" is more difficult to fit into the category of pertinence simply because as expressed by a lay, nonmedical individual it does not convey any specific meaning. On the other hand, as such, it is more accurately characterized as an opinion, and thus not actionable.

■ Lastly, the motion court erred in holding that Lacher could continue his defamation suit based on Engel's statement to the NYLJ that "[the clients, Parametric, were] very poorly served by a member of [the legal] profession to whom duty came well after other aims and interests." Engel correctly asserts that this statement is protected by the privilege created by Civil Rights Law § 74. That section provides in relevant part that a "civil action cannot be maintained against any person . . . for the publication of a fair and true report of any judicial proceeding."

The motion court erred in holding that the privilege was inapplicable because the statement was "not made 'in the course' of a judicial proceeding." The section 74 privilege, unlike the common-law privilege applicable to statements made in the malpractice complaint and the arbitration proceeding, applies to comments made *about* proceedings. Comments that essentially summarize or restate the allegations of a pleading filed in an action are the type of statements that fall within section 74's privilege. (*See Ford v Levinson*, 90 AD2d 464 [1st Dept 1982].)

In this case, the unsolicited NYLJ article presented comments from both sides and appeared the day after the malpractice suit was commenced. Moreover, this Court finds that because the statements made by defendant to the NYLJ were a "fair and true" report of the malpractice action, they fall within the privilege.

In order to be "fair and true" the account given must be only "substantially accurate." (*Holy Spirit Assn. for Unification of World Christianity v New York Times Co.*, 49 NY2d 63, 67 [1979].) Here, Engel's statement that his client was "very poorly served" by Lacher is, if anything, an understatement of the allegation in the complaint that Lacher was negligent and incompetent in preparation for arbitration. Likewise, Engel's observation that Lacher put "other aims and interests" before the good of the client is a tame characterization of the allegations in the complaint that Lacher repeatedly threatened to withdraw, leaving Parametric in the lurch, if they did not immediately pay his allegedly inflated and improper bills.

Accordingly, the order of the Supreme Court, New York County (Shirley Werner Kornreich, J.), entered on or about May 11, 2005, which, to the extent appealed from, denied defendant's motion for summary judgment dismissing the complaint as to certain statements, should be reversed, on the law, without costs, defendant's motion for summary judgment granted in its

entirety, and the complaint dismissed. The Clerk is directed to enter judgment accordingly.

Saxe, J.P., Gonzalez and Malone, JJ., concur.

Order, Supreme Court, New York County, entered on or about May 11, 2005, reversed, on the law, without costs, defendant's motion for summary judgment granted in its entirety, and the complaint dismissed. The Clerk is directed to enter judgment accordingly.