THOMAS BARBARITO, Individually and on Behalf of ADMIT ONE, LLC, et al., Respondents-Appellants, v LEOR ZAHAVI, et al., Defendants, and TLM REAL ESTATE, LLC, et al., Appellants-Respondents. [968 NYS2d 422]—

Orders, Supreme Court, New York County (Anil C. Singh, J.), entered June 21, 2012, which, insofar as appealed from as limited by the briefs, denied TLM's motion to dismiss the eleventh and twelfth causes of action in the amended complaint as against it pursuant to CPLR 3211 (a) (1) and (7), and denied defendants Mark J. Seelig's and Meister Seelig & Fein, LLP's motion to dismiss the amended complaint as against them pursuant to CPLR 3211 (a) (7) and 3016 (b), unanimously reversed, on the law, with costs, and the motions granted. The Clerk is directed to enter judgment dismissing the amended complaint as against defendants Mark J. Seelig; Meister Seelig & Fein, LLP; and TLM Real Estate, LLC. Appeals from order, same

court and Justice, entered December 22, 2011, which, inter alia, denied defendants TLM Real Estate, LLC's and Mark J. Seelig's motions to dismiss the seventh, eleventh, and twelfth causes of action in the original complaint as against them pursuant to CPLR 3211 (a) (1) and (7), unanimously dismissed, without costs, as academic.

For the purpose of determining whether the amended complaint states a cause of action under CPLR 3211 (a), we assume the truth of the following facts taken from the complaint (*see Leon v Martinez*, 84 NY2d 83, 88 [1994]). At some time before January 2004, plaintiff Thomas Barbarito, defendant Leor Zahavi, and nonparties to this appeal founded nominal defendant Admit One, LLC, a ticket brokerage firm. In August 2005, Admit One obtained a revolving line of credit for approximately $6.5 million from nonparty Bank of America.

From Admit One's inception, defendant Seelig and his law firm, defendant Meister Seelig & Fein, LLP (MSF), served as counsel for Admit One, and for Barbarito and Zahavi in their individual capacities. In addition, Seelig was the sole member of defendant TLM Real Estate, LLC (TLM). In July 2008, Zahavi, Barbarito, and certain nonparties to this appeal borrowed around $1.4 million from TLM and executed a note for that loan (the July 2008 note).* Barbarito and Zahavi each executed confessions of judgment for the loan and placed mortgages on their homes.

Plaintiffs assert that through the fall and winter of 2008, Zahavi borrowed more than $4 million from Admit One to pay personal obligations arising from his brokerage account. According to plaintiffs, Zahavi received most of the money by drawing upon Admit One's Bank of America line of credit, hiding the transaction's true nature from Bank of America by creating fictitious ticket purchases from Admit One.

Soon afterward, in April 2009, the July 2008 note was coming due. Zahavi and Seelig negotiated an amended and restated loan agreement by and among Zahavi, Barbarito, and TLM. In that amended loan agreement, the parties agreed to increase the principal amount of the obligation to $1.9 million, representing the original amount borrowed plus additional amounts that Zahavi had allegedly borrowed from TLM after July 2008. The parties then recorded the new amount in an amended and restated promissory note dated as of April 23, 2009 and agreed to extend the July 2008 note's due date until April 22, 2010. Ad-

---

* Although Barbarito and Zahavi originally owned Admit One with other parties, they eventually bought out the other owners so that by December 2001, Barbarito and Zahavi owned the entire company.

ditionally, Barbarito, Zahavi, and TLM entered into a pledge agreement in which Barbarito and Zahavi pledged to TLM their membership interests in Admit One as partial security for the TLM loan.

Plaintiffs allege that in 2009, Bank of America declared Admit One to be in default of the line of credit in the amount of $6.3 million, largely because Zahavi had not paid back the money he borrowed to pay his personal obligations. Bank of America eventually sold its rights in Admit One to defendant (and nonparty to this appeal) Metro Entertainment, Inc. Further, Seelig allegedly advised Barbarito to transfer to Zahavi 32.52 shares of Admit One, thus diluting Barbarito's interest in Admit One and giving Zahavi a majority interest in the company.

According to the amended complaint, on June 18, 2010, TLM and Zahavi entered into an assignment and assumption agreement in which TLM purported to assign to Zahavi all of its rights and interests in the pledge agreement. By letter allegedly prepared by MSF and dated June 21, 2010, Zahavi exercised his rights under the assignment and assumption agreement, claiming to have obtained "all of Barbarito's right, title and interest as a member" of Admit One. Plaintiffs allege that TLM then assigned to Metro Entertainment—a company run by a friend of Zahavi—all its rights and interests in Barbarito's confession of judgment. Plaintiffs allege that Zahavi, with Seelig's assistance, eventually acquired a controlling interest in Admit One.

TLM, Zahavi, and Metro Entertainment offered to release Barbarito from liability under the outstanding TLM and Metro loans if Barbarito would give up his ownership rights in Admit One. Barbarito, however, refused to do so. Plaintiffs allege that thereafter, Zahavi and TLM, along with Metro and other nonparty defendants, seized Barbarito's rights in Admit One and began foreclosure proceedings on his New York and Florida properties.

In May 2011, Barbarito and his wife commenced this action, alleging that Zahavi and Seelig made false representations intended to induce Barbarito to enter into the various transactions surrounding the TLM loan. Those transactions, plaintiffs assert, ultimately deprived Barbarito of his membership interest in Admit One. Plaintiffs also allege that Seelig made misrepresentations that violated his "confidential relationship" as counsel.

To begin, the motion court should have granted TLM's motion to dismiss the eleventh cause of action seeking surplus under UCC 9-610 and 9-616. Uniform Commercial Code § 9-610 (a) states, "[a]fter default, a secured party *may* sell . . . or

otherwise dispose of any or all of the collateral" (emphasis added). Moreover, the pledge agreement specifically states, "Pledgee [i.e., TLM] shall not be obligated to make any sale of the Collateral if it shall determine not to do so . . . ." TLM was therefore not obliged to sell the collateral—that is, Barbarito's membership interest in Admit One—after Barbarito defaulted on the loan.

Further, a secured party is "not obligated to act in a commercially reasonable manner before taking possession of the collateral" (*Chase Equip. Leasing Inc. v Architectural Air, L.L.C.*, 84 AD3d 439, 439 [1st Dept 2011]; *see Bank Leumi USA v Agati*, 5 AD3d 292, 293 [1st Dept 2004]). Here, the record does not indicate that TLM took possession of the collateral.

As to the June 18, 2010 assignment of the pledge agreement, the pledge agreement was merely an incident to the note it was intended to secure. However, the record contains no indication that TLM assigned the underlying note to Zahavi, and the transfer of the pledge agreement without the note is a legal nullity, leaving the transferee without standing to enforce the pledge (*see U.S. Bank, N.A. v Collymore*, 68 AD3d 752, 754 [2d Dept 2009]; *see also Merritt v Bartholick*, 36 NY 44, 45 [1867] [security cannot be separated from debt and exist independently of debt]). The eleventh cause of action therefore fails to state a claim as against TLM.

The twelfth cause of action for an accounting under the UCC also should be dismissed as against TLM. UCC 9-608 (a) (4) is inapplicable because, as we have already concluded, TLM was not obliged to dispose of the collateral. Likewise, UCC 9-616 is inapplicable because a membership interest in a limited liability company is not a consumer good (*see* UCC 9-102 [23]). UCC 9-607, another section that plaintiffs cite in their amended complaint, does not address accountings at all.

The seventh cause of action fails to state a claim for fraud as against Seelig, as it does not allege that he made a material misrepresentation of fact (*see e.g. Eurycleia Partners, LP v Seward & Kissel, LLP*, 12 NY3d 553, 559 [2009]). In fact, plaintiffs attribute only one statement to Seelig—namely, that TLM would refrain from collecting on the July 2008 note until Admit One had sufficient assets. However, plaintiffs do not allege Seelig made the statement with an intent to deceive, or even that the statement was false (*see* CPLR 3016 [b]). Nor do plaintiffs claim that they relied on special knowledge that Seelig may have had, or that Seelig made a misleading partial disclosure (*cf. Williams v Sidley Austin Brown & Wood, L.L.P.*, 38 AD3d 219, 220 [1st Dept 2007]).

Similarly, even if we were to view the seventh cause of action as a claim for a scheme or conspiracy to wrongfully take Barbarito's membership interest in Admit One, it would still fail to state a cause of action as against Seelig. The amended complaint alleges, "TLM's Seelig and Zahavi agreed that . . . the first step of the scheme would be for TLM to take Barbarito's Admit One membership interests and provide those to Zahavi, without TLM complying with its UCC obligations to offer the membership interests to the highest bidders." However, as we have already noted, TLM's purported assignment to Zahavi of its rights under the pledge agreement without a concomitant transfer of the underlying note was a legal nullity. As we have also noted, TLM was not obliged to sell Barbarito's membership interest in Admit One.

The seventh cause of action should also be dismissed insofar as it alleges that MSF aided and abetted the alleged fraud or the scheme, because even assuming for the sake of argument that a fraudulent scheme existed, MSF did not provide "substantial assistance" to any such alleged scheme (*see Stanfield Offshore Leveraged Assets, Ltd. v Metropolitan Life Ins. Co.*, 64 AD3d 472, 476 [1st Dept 2009], *lv denied* 13 NY3d 709 [2009]). On the contrary, documenting and negotiating the April 23, 2009 loan transaction from TLM to plaintiffs "fall[s] completely within the scope of defendant's duties as an attorney" (*Art Capital Group, LLC v Neuhaus*, 70 AD3d 605, 606 [1st Dept 2010]).

To the extent the seventh cause of action alleges that Seelig aided and abetted a fraud against nonparty Bank of America, it should be dismissed because plaintiffs were not injured when Bank of America, after making a loan to Admit One, sold the loan at a steep discount to Metro Entertainment.

Finally, the "single motion rule" (CPLR 3211 [e]) does not bar Seelig and MSF from moving to dismiss the amended complaint, as the fraud cause of action in the amended complaint is not the same as the corresponding cause of action in the original complaint. Indeed, plaintiffs did not assert the fraud claim against MSF in the original complaint, so MSF could not have moved to dismiss that claim. Although the malpractice cause of action is the same in the original complaint as in the amended complaint, the motion court dismissed that cause of action in the original complaint. Therefore, because Seelig and MSF did not have the opportunity to address the merits of the original cause of action, the single motion rule does not apply (*Rivera v Board of Educ. of the City of N.Y.*, 82 AD3d 614 [1st Dept 2011]; *cf. B.S.L. One Owners Corp. v Key*

*Intl. Mfg.*, 225 AD2d 643, 644 [2d Dept 1996]). Concur—Friedman, J.P., Saxe, Moskowitz and DeGrasse, JJ.