*Kesner v. Dow Jones & Co.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of June, two thousand twenty-three.

PRESENT:

> ROSEMARY S. POOLER,
> RICHARD J. SULLIVAN,
> BETH ROBINSON,
> *Circuit Judges.*

———————————————————————

HARVEY J. KESNER,

> *Plaintiff-Appellant*,

v.                                                                No. 22-875

DOW JONES & COMPANY, INC., d.b.a. BARRON'S, INC., TERI BUHL, WILLIAM "BILL" ALPERT,

> *Defendants-Appellees*.\*

———————————————————————

———————————

\* The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

**For Plaintiff-Appellant:** JOHN A. CIRANDO, D.J. & J.A. Cirando PLLC, Syracuse, NY (Steven S. Biss, Law Office of Steven S. Biss, Charlottesville, VA, *on the brief*).

**For Defendants-Appellees Dow Jones & Company, Inc. and William "Bill" Alpert:** NATALIE J. SPEARS, Dentons US LLP, Chicago, IL (Gregory R. Naron, Dentons US LLP, Chicago, IL; Sandra D. Hauser, Sara Gates, Dentons US LLP, New York, NY, *on the brief*).

**For Defendant-Appellee Teri Buhl:** WESLEY J. PAUL, Paul Law Group, LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Paul A. Engelmayer, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Harvey Kesner appeals from the district court's orders (1) dismissing, pursuant to Federal Rule of Civil Procedure 12(b)(6), his claims for defamation against Dow Jones & Company, Inc. and William Alpert related to an article published in *Barron's* on October 4, 2018 (the "*Barron's* article"), and (2) dismissing, pursuant to Federal Rule of Civil Procedure 56, his claims for defamation against Teri Buhl related to two articles published on her website on October 31, 2018 and

2

June 7, 2019, as well as one of her tweets from March 27, 2019 (the "October 2018

article," "June 2019 article," and "March 2019 tweet," respectively).[1]  We review

the district court's Rule 12(b)(6) and Rule 56 dismissals de novo, applying the same

standards as the district court.  *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230

(2d Cir. 2016) (explaining that "[t]o survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face," drawing all reasonable inferences in the plaintiff's favor

(internal quotation marks omitted)); *Garcia v. Hartford Police Dep't*, 706 F.3d 120,

126–27 (2d Cir. 2013) (explaining that "summary judgment may be granted only if

there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law," drawing all inferences against the moving party

(internal quotation marks and alterations omitted)).  We assume the parties'

familiarity with the underlying facts, procedural history, and issues on appeal.

## I.  Rule 12(b)(6) Dismissal

Under New York law, a plaintiff must establish five elements to make out a

claim for defamation and, more specifically, libel:  (1) a written defamatory

---

[1] Kesner has abandoned on appeal his claims for defamation against Buhl related to other articles and tweets, as well as his claims for commercial disparagement, deceptive and unfair trade practices, tortious interference with contract, and common-law conspiracy against Dow Jones, Alpert, and Buhl.  *See Schwapp v. Town of Avon*, 118 F.3d 106, 112 (2d Cir. 1997).

3

statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, consisting either of negligence or actual malice, (4) falsity of the defamatory statement, and (5) special damages or per se actionability. *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019); *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000); *see also Armstrong v. Simon & Schuster*, 85 N.Y.2d 373, 380–81 (1995) (also providing cause of action for defamation by implication, which "is premised not on direct statements but on false suggestions, impressions[,] and implications arising from otherwise truthful statements").[2] That said, New York also offers a number of safe harbors against a defamation claim. For example, the fair-report privilege, enshrined in statute, provides absolute immunity to "any person, firm[,] or corporation[] for the publication of a fair and true report of any judicial proceeding, legislative proceeding[,] or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published." N.Y. Civ. Rights Law § 74; *see also Karedes v. Ackerly Grp., Inc.*, 423 F.3d 107, 119 (2d Cir. 2005) (citing New York case law on the fair-report privilege). Similarly, the common-law fair-index privilege provides that a headline is not

---

[2] The parties contested below whether New York or Florida law should apply to Kesner's defamation claims. The district court conducted a choice-of-law analysis and concluded that New York law should apply – a determination that Kesner does not challenge on appeal.

actionable so long as it is "a fair index of the article with which it appears." *Mondello v. Newsday, Inc.*, 774 N.Y.S.2d 794, 794 (2d Dep't 2004).

Applying these principles, we agree with the district court that Kesner's complaint failed to state a claim for defamation against Dow Jones and Alpert based on the *Barron's* article, entitled "The Lawyer at the Center of SEC Pump-and-Dump Case." We start with the body of the article. To the extent it implied that Kesner, a securities lawyer, had failed in his role as a gatekeeper for, and protector of, the investing public, that implication stemmed directly from statements "essentially summariz[ing] or restat[ing] the allegations" of a malpractice suit that had been filed against Kesner by a former client. *Lacher v. Engel*, 817 N.Y.S.2d 37, 43 (1st Dep't 2006). Because the *Barron's* article in no way "suggest[ed] more serious conduct than that actually suggested" by the allegations in the malpractice suit itself, the article's statements and implications related to that suit are covered by the fair-report privilege. *Daniel Goldreyer, Ltd. v. Van de Wetering*, 630 N.Y.S.2d 18, 22 (1st Dep't 1995). As for the article's headline, we again agree with the district court, finding that it fairly indexes the body of the article – which accurately reported on Kesner's connections to several key players in a case the U.S. Securities and Exchange Commission ("SEC") had brought

5

against Kesner's client Barry Honig (the "SEC lawsuit") – and as such is not actionable for defamation. *See, e.g.*, *Gunduz v. N.Y. Post Co.*, 590 N.Y.S.2d 494, 494 (1st Dep't 1992). Because Kesner presents little to no developed argument explaining why either of these conclusions was error under New York law, we decline to disturb the district court's Rule 12(b)(6) dismissal.[3]

## II.    Rule 56 Dismissal

The district court also correctly concluded that Buhl was entitled to summary judgment on Kesner's defamation claims related to the October 2018 article, June 2019 article, and March 2019 tweet, as Kesner failed to adduce sufficient evidence to prove that Buhl met the fault requirement – in this case, actual malice. *See* N.Y. Civ. Rights Law § 76-a (requiring a plaintiff to prove actual malice for a defamation claim grounded in "any communication in a place open to the public or a public forum in connection with an issue of public interest").[4]

---

[3] Kesner glancingly suggests in a footnote that the district court was not permitted to dismiss his claims against Dow Jones and Alpert under Rule 12(b)(6) on the basis of affirmative defenses. Kesner has not properly preserved this argument. *See Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001). Furthermore, we note that this Court has routinely affirmed Rule 12(b)(6) dismissals grounded in the fair-report privilege. *See, e.g.*, *Daleiden v. Planned Parenthood Fed'n of Am.*, No. 21-2068, 2022 WL 1013982, at *2 (2d Cir. Apr. 5, 2022).

[4] In November 2020, New York amended its "anti-strategic litigation against public participation" statute to include this provision (the "anti-SLAPP amendment"). Kesner did not take issue with the applicability of the anti-SLAPP amendment before the district court or in his briefs to this Court, doing so for the first time after briefing in correspondence submitted pursuant to Federal

To show actual malice, a plaintiff must establish by clear and convincing evidence that the communication on which the defamation action is based "was made with knowledge of its falsity or with reckless disregard of whether it was false." *Id.* § 76-a(2); *see also Albert v. Loksen*, 239 F.3d 256, 272 (2d Cir. 2001) ("Reckless disregard as to falsity means that the statement is made with a high degree of awareness of the publication's probable falsity or while the defendant in fact entertained serious doubts as to the truth of the publication." (internal quotation marks and alterations omitted)). "Although actual malice is subjective, a court typically will infer actual malice from objective facts." *Celle*, 209 F.3d at 183 (internal quotation marks omitted). For instance, "[a]ctual malice can be established through the defendant's own actions or statements, the dubious nature of [her] sources, and the inherent improbability of the story among other circumstantial evidence." *Id.* (internal quotation marks and alterations omitted).

Here, there was not sufficient evidence, even resolving all ambiguities and drawing all permissible inferences in favor of Kesner, from which a rational trier

---

Rule of Appellate Procedure 28(j). *See* Doc. Nos. 110, 115 (relying primarily on *Gottwald v. Sebert*, 165 N.Y.S.3d 38 (1st Dep't 2022), *rev'd* 2023 WL 3959051 (June 13, 2023), which predated Kesner's appellate briefing, to argue that the anti-SLAPP amendment should not be given retroactive effect). At minimum, Kesner forfeited this line of argument by not raising it in his appellate briefing, and as such we assume *without deciding* that the anti-SLAPP amendment (and thus the actual-malice standard) is applicable to this case. *See Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 175 n.18 (2d Cir. 2014).

of fact could have found by clear and convincing evidence that Buhl acted with actual malice when she published the October 2018 article, June 2019 article, and March 2019 tweet. *See Albert*, 239 F.3d at 263–64. Although Kesner points to various pieces of evidence that he asserts could have supported an actual-malice finding, we disagree, largely for the reasons already described by the district court.

*First*, Kesner contends that Buhl's statements in the October 2018 article and March 2019 tweet implying that Kesner acted illegally in concert with Honig were inherently improbable – and thus likely made with actual malice – in light of his "clean record," "the fact that [his] name was not mentioned" in the SEC lawsuit, and the fact that other entities related to that litigation had "never accused [him] of any illegal conduct." Kesner Br. at 27–29. But as explained by the district court, the statements contained in the October 2018 article and March 2019 tweet were not inherently improbable merely because others, including the SEC, had not directly accused Kesner. In any event, even though Kesner's name was not explicitly spelled out in the SEC lawsuit, the first amended complaint in that action did in fact attribute significant irregular conduct to an unnamed lawyer. And Buhl provided substantial evidence supporting her reasonable belief that the unnamed lawyer was Kesner, giving her "solid ground on which to infer Kesner's knowing

8

culpability in Honig's violations of the law." App'x at 1270–71 (collecting relevant allegations from the SEC lawsuit concerning the unnamed lawyer); *see also id.* at 1273 (collecting evidence describing Buhl's basis for believing the unnamed lawyer was Kesner).[5]

*Second*, concerning the June 2019 article – which implied that Kesner engaged in questionable transactions on behalf of another client, Andy DeFrancesco – Kesner suggests that there is a genuine dispute of material fact on actual malice because Kesner "testified unequivocally that he did not assist, aid[,] or abet . . . DeFrancesco in any 'securities fraud,' violations of the beneficial[-]ownership rules, or other illegal or unethical conduct, and that no email in Buhl's possession showed that [he] did." Kesner Br. at 30. As an initial matter, Kesner *testified* to no such thing, instead making the above assertions in his written response to Buhl's statement of material facts submitted pursuant to the district court's local civil rules. Because those assertions were completely unsupported by any evidence, the district court was free to disregard them. *See* S.D.N.Y. &

---

[5] The district court noted that "Kesner, tellingly, does not dispute that the 'Issuer's Counsel' and 'Issuer's Counsel's Partner' as used in the SEC [first amended complaint] described, respectively, Kesner's then-law firm and Kesner himself." *Id.* at 26. Kesner did technically dispute those facts in his response to Buhl's statement of material facts, but because Kesner (unlike Buhl) cited no evidence to support his assertions, the district court reasonably deemed Kesner to have admitted those facts. *See* App'x at 1259; *see also* S.D.N.Y. & E.D.N.Y. Local Civ. R. 56.1(c); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73–74 (2d Cir. 2001).

E.D.N.Y. Local Civ. R. 56.1(c); *Holtz*, 258 F.3d at 73–74.  Moreover, even if Kesner had so testified, such testimony would have been irrelevant, as evidence tending to show that *Kesner* did not in fact engage in questionable transactions on behalf of DeFrancesco would have shed no light on whether *Buhl* acted with the requisite mental state.

*Third*, Kesner points to a 2017 sworn statement made by an individual named Daniel Fisher in the course of a separate litigation as evidence that "Buhl completely fabricated" the defamatory statements in question.  Kesner Br. at 30.  In that sworn statement, Fisher admitted that he spoke with Buhl on several occasions in the fall of 2016, stated that he may have been a source referenced by Buhl in articles published in November 2016 and February 2017, but denied having told Buhl that the SEC was investigating Kesner – contrary to what Buhl claimed in those articles the source had said.  Yet, without any evidence actually linking the information Buhl gleaned from Fisher in 2016 to the statements in the articles published in November 2016 and February 2017 – let alone to the statements at issue in this case from the October 2018 article, June 2019 article, and March 2019 tweet – Fisher's sworn statement does not establish a triable issue on actual malice.

*Fourth*, Kesner argues that the tenor of Buhl's years-long coverage of Kesner "plainly brimmed with raw personal contempt." Kesner Br. at 33. To support that claim, Kesner cites Buhl's usage of allegedly charged terms like "bad actor," "illegal," "back[-]room deals," "intimidation," and "securities fraud." *Id.* at 34. But even if we accepted the premise that Buhl harbored ill will towards Kesner (and we do not), "[s]tanding alone . . . evidence of ill will is not sufficient to establish actual malice." *Celle*, 209 F.3d at 183.

*Fifth*, and finally, Kesner posits that Buhl's general failures to investigate known and obvious facts connote actual malice. That speculative assertion, however, is insufficient to preclude summary judgment. *See Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010). Having forgone discovery, Kesner identified no evidence pertaining to the investigative steps Buhl did or did not take; he therefore has not established whether Buhl entertained serious doubts about her reporting and yet purposefully avoided the truth. *See Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 125–26 (2d Cir. 2013).

In sum, without additional evidence, we agree with the district court that Kesner failed to show that a rational trier of fact could find that Buhl acted with actual malice when she published the October 2018 article, June 2019 article, and

11

March 2019 tweet. As a result, the district court properly granted summary judgment for Buhl and dismissed Kesner's defamation claims against her.

\* \* \*

We have considered Kesner's remaining arguments and found them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court